[No. 4307.    Decided September 6, 1902.]

RAND, McNALLY & COMPANY, *Appellant, v.* W. G. HART-
RANFT *et al., Respondents.*

SCHOOLS—STATE BOARD OF EDUCATION—CONTRACTS FOR SCHOOL BOOKS
—VALIDITY.

It being within the legislative power to enact laws authorizing
boards of education to enter into contracts providing for the
exclusive use of certain text-books during a limited period, the
provisions of the Code of Public Instruction (Laws 1897, p. 356),
which empower the state board of education to adopt text-books
for the schools and to contract with the publishers for the use
of certain text-books during a period of five years, will not be
regarded as unconstitutional on the ground of being creative of
monopolies and therefore opposed to public policy.

SAME—IMPAIRMENT OF CONTRACT.

A contract entered into by the state board of education, under
Laws 1897, p. 356, whereby it was agreed plaintiff should supply
certain books to the public schools for a period of five years,
being a valid one, its obligation could not be impaired either by
subsequent legislation or by the action of any board proceeding
by authority of such legislation.

SAME—SELECTION OF SUPPLEMENTARY BOOKS BY COUNTY BOARD OF
EDUCATION.

Laws of 1901 (Extra Session), p. 8, which authorize local
school boards to adopt text-books, does not empower them to
make selections which will impair existing contracts made by
the state board of education, and such act would be unconstitu-
tional in so far as it impaired contracts made by the state board
under Laws 1897, p. 356, although the act may be operative and
effective as a constitutional law, after the expiration of existing
contracts that might be affected by it.

SAME—INJUNCTIVE RELIEF—NOMINAL DAMAGES.

The state board of education, pursuant to Laws 1897, p. 356,
awarded plaintiff a contract for five years to supply readers
for grades numbered from one to six of the public schools.
The defendants as a county board of education selected another
reader for the first grade, and shifted the use of plaintiff's
readers to grades numbered from two to seven.    Plaintiff sought

to have the board enjoined from interfering with its contract, and thereby reducing its profits. The plaintiffs answered that plaintiff's sales would not be decreased by the change.

*Held,* That by demurring to the answer, plaintiff admitted the truth of its allegations and therefore no damage was shown, and that equity would not interfere by injunction in behalf of one who was merely nominally damaged as to profits arising from a contract.

Appeal from Superior Court, King County.—Hon. Boyd J. Tallman, Judge. Reversed.

*Ballinger, Ronald & Battle* and *Vance & Mitchell,* for appellant.

*Walter S. Fulton* and *Vince H. Faben,* for respondents.

The opinion of the court was delivered by

Hadley, J.—This action was brought by appellant against respondents to enjoin them from an alleged interference with the contract rights of appellant to furnish certain school books for use in the schools of King county. Respondent Hartranft is the county superintendent of King county, and is *ex officio* a member of the board of education of the same county. He, with the remaining respondents, constitute the board of education of said county, organized under and by virtue of an act of the legislature as found in chapter 5, page 8, Laws of Extraordinary Session 1901. The complaint alleges that in May, 1900, in accordance with the laws of the state of Washington, the state board of education, duly authorized, adopted a list and series of text books for use in the public schools of said state, prescribed a course of study for use in said schools, and entered into certain contracts for the furnishing of said text books in the schools; that said state, through its duly authorized agents, the state board of education, entered into a certain contract with the appel-

lant adopting for use in the schools of the state certain text books and publications published by appellant, and for the furnishing of the same by appellant for the term of five years beginning September 1, 1900, and ending September 1, 1905. The said contract was in writing; its terms, with the omission of prices stated, being as follows:

"This contract, made and entered into this fourteenth day of May, 1900, between the state board of education of the state of Washington, party of the first part, and Rand, McNally & Company, of Chicago, Illinois, a corporation, party of the second part,

"Witnesseth: That the aforesaid party of the second part has made a proposition to supply to the people of the state of Washington certain text-books, a copy of which proposition is hereto attached and made a part of this contract; and in consideration of the terms set forth in said proposition, and of the terms of this contract, the state board of education of the state of Washington, party of the first part, hereby adopts the following named books, to be used in the public schools of the state of Washington for the period of five years from and after September 1, 1900: Lights to Literature, for the first and second years; New Century Readers, for the third, fourth, fifth and sixth years.

"That for and in consideration of the adoption of the books hereinbefore mentioned, the said party of the second part hereby agrees to furnish books in sufficient quantities for the use of the common schools of Washington for the full term of five years as aforesaid, at the following exchange, wholesale and retail prices, in accordance with the law governing the same:  .  .  .

"And the said party of the second part agrees to maintain the present and superior style and quality of scholarship, material, illustrations and general mechanical excellencies of the aforesaid books, as shown by samples submitted to the said board of education, party of the first part.

38—29 Wash.

"And the said party of the second part hereby promises and agrees that the books above named shall be of the kind and quality set forth in their proposal and this contract, and the prices of said books shall be as hereinbefore specified, and that this contract shall be null and void, at the option of the said party of the first part, if the party of the second part fail to comply with all the terms hereof; *Provided,* a reasonable notice shall be given to the party of the second part by the party of the first part, together with a reasonable opportunity to fulfill the terms of this agreement."

It is further alleged: That the said contract was duly approved by the proper officers of the state, and that a bond as required by law was executed, approved, and filed with the proper custodian. That the course of study prescribed by the state board of education directed and required the books mentioned in the foregoing contract to be used in such schools as are embraced in the school districts of King county, as follows: First year, Lights to Literature, book 1; second year, Lights to Literature, book 2; third year New Century Reader, book 3; fourth year, New Century Reader, book 4; fifth year, New Century Reader, book 5; sixth year, New Century Reader, book 6. That the said adoption of contract and prescribed course of study required the use of said books during the entire life of said contract, and that said contract has been complied with by appellant up to date. It is next alleged that the aforesaid act of 1901, under which the respondents were organized into a board of education for King county, authorizes said board to select a series of text books for use in all school districts in said county not maintaining a high school course of more than two years, and to adopt said books and enter into contracts for furnishing the same for the period of five years from the date of introduction; that the act authorizes said board to adopt additional and sup-

plemental text books, and that it permits and requires the state superintendent of public instruction to adopt and prescribe a course of study other than the one prescribed and adopted upon the execution of appellant's contract aforesaid, which then became and is now a part of the contract; that said legislative act is in violation of appellant's contract rights, and an impairment of the contract above set out. It is also alleged that the act is in violation of article 9, § 2, of the constitution of Washington, which requires a uniform system for the public schools of the state. It is further alleged that the respondents, acting in their official capacity as such county board of education, threaten to, and will, unless restrained, advertise in a newspaper of general circulation in King county to the effect that said board will, on a day to be named, select text books for the use of all the school districts in said county outside of school districts maintaining a high school of not less than two years' course of study, and will invite proposals for the furnishing of such books for the period of five years from the date of introduction thereof into the schools of such districts, and threaten to and will, unless restrained, displace all the books now in use as provided in appellant's contract under the list and series adopted as aforesaid; that, in reliance upon said contract, appellant printed and prepared for sale and distribution the books designated in the contract at great cost and expense, and if the books designated in the contract are supplanted and displaced by others, the appellant will suffer great and irreparable injury and damage, in that the sale of the books described in appellant's contract will be destroyed. Respondents answered the foregoing complaint, admitting the contract of appellant with the state, but denying in the main other material allegations. It

is also affirmatively alleged that the respondents, acting as said board of education, by resolution determined that it was the policy and intention of the said board not to interfere with appellant's contract rights, but that it was intended only to adopt such supplementary books as will not interfere with the use of those to be furnished under appellant's contract, and that they do not intend to displace any book or books contracted to be furnished by appellant. Appellant demurred to the affirmative matter in the answer on the ground that the facts stated do not constitute a defense. The demurrer was overruled, and exception to such order was preserved. Thereafter appellant filed its supplemental complaint, in which all matters set forth in the original complaint are realleged, together with the following additional allegations, viz: That the respondents did adopt certain text books for the use of the common schools of King county outside of the city of Seattle during the first, second, third, fourth, fifth, and sixth years and grades of said schools, and did enter into a contract for the use of said readers in said schools, said books being other than the books owned by appellant and designated in its contract aforesaid; that respondents styled them "supplementary" books, declaring it to be the purpose of the board to require the use of said so-called supplementary books merely as subsidiary and amendatory to the text books on reading belonging to the appellant. But the appellant charges that the only intent and purpose of said supplementary books was and is to supersede appellant's books, and render the same unnecessary, and to deprive appellant of its contract rights in and to the use of its reading books in said schools; that since the 3d day of December, 1901, respondents have caused the use in said schools of the so-adopted supplementary books to the practical exclusion of appellant's books therein; that respondents

adopted a text book on reading for the first year of said schools other than the one to be furnished under appellant's contract, and that they are now using and threatening to continue to use such book to the exclusion of appellant's books.     Respondents answered the supplemental complaint, repeating the same denials and realleging the facts set up in the original answer, together with the following additional allegations, viz.:     They admit that on or about December 3, 1901, they adopted a text book in reading for the first year, and entered into a contract for the use of the same, said reader being other than the one designated in appellant's contract to be furnished for said year. It is further affirmatively alleged that said board, being of the opinion that the reader contracted by appellant to be furnished the first year is too deep and far advanced for use in said first year, adopted another reader for use in said year, and thereupon adopted the reader of appellant theretofore used during said first year to be used during the second year, and likewise adopted appellant's reader theretofore used in the second year to be used in the third year, and its reader before used in the third year to be used in the fourth year, the one before used in the fourth year to be used in the fifth year, the one before used in the fifth year to be used in the sixth year, and the one before used in the sixth year to be used in the seventh year; that by said action the use of appellant's readers has been continued in said schools, and they are now in use for the grades and years aforesaid; that the adoption and use of such books has not and will not decrease or lessen the sale of any book or books contracted to be furnished by appellant.     To the affirmative matter in the foregoing answer appellant demurred generally.     The demurrer was overruled.     Appellant excepted, and, having declined to plead further,

judgment was entered to the effect that the answer to the supplemental complaint is a good and sufficient answer, and that upon the pleadings appellant is not entitled to the writ of injunction prayed, and the action was dismissed. From said judgment this appeal was taken.

It is assigned as error that the court overruled the demurrer of appellant to respondents' answer to the original complaint, and also that the demurrer to the answer to the supplemental complaint was overruled. The essence of the controversy is involved in the latter assignment, and we will confine ourselves to a discussion thereof. It is conceded by respondents that the constitutionality of legislative enactments authorizing such contracts as appellant's has been generally sustained, and it is merely suggested in their brief that the better rule would be to hold that such contracts are creative of monopolies, and opposed to public policy. We will, however, not enter upon a discussion of that subject, since respondents concede that such contracts are generally sustained by competent authority. The following cases cited by appellant are in point: *State ex rel. Clark v. Haworth,* 122 Ind. 462 (23 N. E. 946, 7 L. R. A. 240); *Curryer v. Merrill,* 25 Minn. 1 (33 Am. Rep. 450); *People ex rel. Bellmer v. State Board of Education,* 49 Cal. 684; *Leeper v. State,* 103 Tenn. 500 (48 L. R. A. 167, 53 S. W. 962). Numerous other cases are cited, but we do not deem it necessary to cite them here. Appellant's contract appears to have been executed in all respects pursuant to the provisions contained in chapter 118, page 356 *et seq.,* Session Laws of 1897, designated as a "Code of Public Instruction." In view of said legislative authority, and of the construction placed upon similar enactments in other jurisdictions, the contract must be held to be a valid one, and it must not be impaired by any subsequent legislative enactment, or by

the action of any board proceeding by authority of such
subsequent legislation.

We are asked to hold that the above mentioned act of
1901 is unconstitutional. We decline to hold here that the
act in itself is unconstitutional. In so far, however, as
the respondents may proceed, acting under the provisions·
of that law or otherwise, to the impairment of appellant's
contract, they are acting without constitutional authority.
The validity of the act of 1901 in its operation after the
expiration of the period covered by appellant's contract is
not now before us. We have to deal with it here only in its
relation to appellant's contract. Certainly any of its pro-
visions which may authorize such procedure as will im-
pair that contract must be postponed in their operation
until after the contract period has expired. We think it
was clearly intended by the contract that appellant should
have the exclusive right to furnish readers in six grades of
the common schools of the state for the period of five years.
The question here is, has that right been impaired, or is
such impairment threatened, by respondents? This cause
must be determined upon the pleadings. The answer to
the supplemental complaint alleges that respondents have
authorized the use of a reader other than that of appel-
lant in the first year of the schools, but that they have
retained appellant's readers in the six following years. It
thus appears by the answer that appellant is furnishing the
books for six grades or years, the full number provided
by the contract. It is further alleged that this arrange-
ment has not and will not lessen the sales of appellant's
books as provided under the contract. The above allega-
tion must be taken as admitted by appellant's demurrer
for the purpose of this review. The essence of appellant's
interest is the profit to be derived from sales under the
contract. If the action of respondents has not and will

not lessen those profits, then we do not see that appellant is damaged. It appears from the face of the answer that appellant is uninterruptedly furnishing books to the same number of grades mentioned in its contract, and, while it is true the numbers mentioned in the contract are from the first to the sixth years, inclusive, and the numbers now using the books are from the second to the seventh years, inclusive, yet we cannot assume that the mere statement of that fact implies a lessening of the sales of books, in the absence of proof upon the subject, and especially so when it is specifically alleged that the sales have not been and will not be lessened thereby. It is not to be implied therefrom that there is any postponement of sales or payments that might operate to create injury or damage, for the reason that all the grades are continuously running during school years, and each demands books from the beginning. For example, the second grade demands its books from date as promptly and continuously as would the first grade, and the same is true of the following grades, including the seventh. We think, therefore, that the facts stated in the answer, which the demurrer admits, show no accrued or accruing damage to appellant. Appellant, however, insists that when it appears that the readers are not used in the first grade as one of the grades named in the contract, it is for that reason alone entitled to the writ of injunction, and to the specific and literal enforcement of the contract, whether any actual damage is occasioned by the act of respondents or not. In support of this position 2 High on Injunctions (3d ed.), § 1135, is cited. This principle is somewhat strongly stated in the text cited, and seems to warrant appellant's contention. The author, however, cites but few cases in support of the statement. The cases cited are English cases, with one exception,—that of *Steward v. Winters*, 4 Sandf. Ch. 587. In the last

mentioned case a lease of real estate required the lessee to conduct upon the premises a regular drygoods jobbing business and no other. He undertook to conduct the business of an auctioneer upon the premises, and was enjoined from so doing. It was insisted that the lessor was not damaged, but it was held that he was entitled to the writ upon the principle that the owner of land, when leasing it, may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land. The reasons for the holding in that case do not seem to forcibly apply here, where the interest of appellant is not what use shall be made of a permanent property, but merely the profits arising from a contract. The rule, as stated in the cited section from High on Injunctions, is much modified by the text of the succeeding section, and in 16 Am. & Eng. Enc. Law (2d ed.), p. 360, the following general principle is declared:

"To entitle a person to injunctive relief he must establish as against the defendant an actual and substantial injury, and not merely a technical and inconsequential wrong entitling him to nominal damages only; and this is true whether such injury be single or continuous, or whether it be the subject of one act only or of successive acts."

In support of the foregoing statement of the text numerous English and American authorities are cited, many of which we have examined, and find to be in point. We are constrained to the conclusion, therefore, that the weight of authority is in support of the principle that equity will not interfere by injunction in behalf of one who is merely nominally damaged as to profits arising from a contract such as the one in the case at bar. The wrong asserted must be more than a mere technical or inconsequential one to warrant equitable interference. It is possible that

proofs under the issue tendered by the answer in this case would show that actual damage has accrued and will accrue by reason of the acts of respondents. In that event, we think, appellant would be entitled to the writ which it asks; but with the allegations of the answer standing undenied, and without proofs, we think the court did not err in refusing to grant the writ. However, in view of the extensive field covered by this contract, involving as it does the school districts throughout the entire state and in view of the further fact that the principles here involved may apply to other similar controversies that may possibly arise, we believe it may be in the interest of all concerned, and may tend to lessen the number of such controversies, if this case shall be heard upon proofs, should the appellant so desire. We therefore instruct the lower court to grant appellant a reasonable time to further plead to the answer and submit proofs, if it so desires; in which case the judgment entered shall be vacated, but otherwise it shall stand affirmed. Costs of appeal are taxed to appellant.

REAVIS, C. J., and MOUNT, ANDERS and WHITE, JJ., concur.

FULLERTON, J., concurs in the result.

DUNBAR, J., did not participate in the determination of this case.